UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| ERVIN J. BEST | : | |
| Debtor | : | Bankruptcy No. 08-17185bf |

---

| | | |
|---|---|---|
| ERVIN J. BEST | : | |
| Plaintiff | : | |
| v. | : | |
| DAVID A. GALLOWAY, STEVEN L. LANGE, AMERICAN RESIDENTIAL EQUITIES XXXXI LLC, JOHN D. GREEN, solely in his official capacity as sheriff of the City of Philadelphia, and WILLIAM C. MILLER, standing chapter 13 trustee | : : : : | |
| Defendants | : | Adversary Proc. No. 09-0048 |

---

| | | |
|---|---|---|
| STEVEN L. LANGE and DAVID A. GALLOWAY | : | |
| Plaintiffs | : | |
| v. | : | |
| ERVIN BEST | : | |
| Defendant | : | Adversary No. Proc. 09-0084 |

....................................................

MEMORANDUM

....................................................

There are two motions before this court filed by Messrs. David A. Galloway
and Steven L. Lange: a motion to dismiss the amended complaint filed by the chapter 13

debtor, Mr. Ervin Best, docketed at Adversary Proceeding No. 09-0048; and a motion to remand a state court proceeding removed to this court by Mr. Best and docketed at Adversary Proceeding No. 09-0084. The proceeding removed had been initiated by Messrs. Lange and Galloway against Mr. Best.

A consolidated hearing to resolve these two motions was held, and neither party offered any evidence concerning the request for remand. Instead, the parties offered oral argument and supporting memoranda.

In connection with the motion to remand Adversary No. 09-0084, this proceeding concerns an ejectment action brought by Messrs. Lange and Galloway against Mr. Best involving real property located on West Allegheny Avenue in Philadelphia. Adversary No. 09-0048 was commenced by Mr. Best against Messrs. Lange and Galloway and, after amendment, American Residential Equities XXXXI, LLC, Philadelphia Sheriff John D. Green and standing chapter 13 trustee William C. Miller, Esq. were added as defendants. That adversary proceeding, as will be discussed, also concerns the West Allegheny Avenue property.

The facts surrounding Messrs. Lange's and Galloway's motion for remand do not appear to be disputed. Similarly, for purposes of the outstanding motion to dismiss, to the extent it is based upon the plaintiff's failure to state a cause of action, I shall accept the allegations in the amended complaint as true in determining whether the plaintiff has stated a claim, with those averments construed in a light most favorable to the plaintiff. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

2

I.

On January 19, 1999, Ameriquest Mortgage Company obtained a mortgage on Mr. Best's real property, located at 3422 West Allegheny Avenue, Philadelphia, Pennsylvania.  Amended Complaint, ¶ 12.  Apparently, that mortgage fell into default and on July 15, 2004, Ameriquest commenced a foreclosure action in the Philadelphia Court of Common Pleas against the West Allegheny Avenue property.  Id., at ¶ 20.  On September 7, 2004, a judgment in foreclosure was entered by default.  Id., at ¶ 21.

On December 2, 2004, after the foreclosure judgment was entered, Ameriquest assigned its mortgage to defendant American Residential Equities XXXXI LLC.  Id., at ¶ 28.  Thereafter, beginning in January 2005, American Residential, through its agent Select Portfolio Servicing, sent notices to Mr. Best and communicated with him via telephone.  Id.,  at ¶¶ 42, 45, 47, 59, and 60.  Mr. Best avers that among those communications was a notice informing him of his right to cure his mortgage delinquency within thirty days.  Id., at ¶¶ 60, 70.

Mr. Best asserts that on March 8, 2005, without prior notice to him, the Sheriff of Philadelphia County conducted a foreclosure sale of the West Allegheny Avenue property, purportedly based upon Ameriquest's judgment in foreclosure and the writ of execution issued thereupon.  Id., at ¶¶ 66, 71-72.[1]  The West Allegheny Avenue property was purchased at this foreclosure sale by Messrs. Galloway and Lange.  Id., at ¶ 87.  The sheriff then issued a deed dated May 21, 2005, to Messrs. Galloway and Lange,

---

[1]In its answer to the amended complaint, defendant American Residential Equities asserts that the foreclosure sale occurred with adequate notice on March 1, 2005.

3

purporting to convey to them title to 3422 West Allegheny Avenue.  Id., at ¶ 88.  The movants recorded the deed on June 21, 2005.  Id., at ¶ 91.

On October 9, 2007, Messrs. Lange and Galloway commenced an ejectment action against Mr. Best in the Philadelphia Court of Common Pleas, docketed as Lange v. Best, October Term 2007, No. 999.  The movants asserted in that state court civil action two counts: ejectment from the realty, and damages for mesne profits (rent).  Mr. Best answered the state court complaint, denying the movants' allegations and asserting new matter (i.e., affirmative defenses).  In his state court answer, he averred that the original Ameriquest mortgage was invalid, as was the foreclosure judgment.  He also asserted that Ameriquest had no authority to schedule the sheriff sale of his property based upon its foreclosure judgment because it no longer held the mortgage at the time of sale, having assigned it to American Residential Equities.

Accordingly, Mr. Best maintained in state court that the sheriff sale of his property was invalid and the sheriff's deed to the West Allegheny Avenue property did not convey title to Messrs. Galloway and Lange.  Mr. Best requested that the state court dismiss the ejectment action with prejudice as well as the claim for rent.

On June 27, 2008, the state court plaintiffs moved for summary judgment, which was opposed by Mr. Best.  On October 31, 2008, Mr. Best filed the above-captioned voluntary chapter 13 bankruptcy petition.  On November 6, 2008, the state court granted summary judgment to Messrs. Galloway and Lange based upon their pre-bankruptcy motion.  Mr. Best filed a notice of appeal from that order.

As this state court adjudication occurred after the debtor's bankruptcy filing, its validity under section 362 was at issue.  Messrs. Lange and Galloway therefore

4

moved to terminate and annul the bankruptcy stay, which motion was opposed by Mr.

Best.  By order dated February 20, 2009, accompanied by a statement of reasons, I

granted the motion to terminate the stay filed by Messrs. Lange and Galloway, which

order allowed them to exercise their non-bankruptcy law rights, if any, to obtain

possession of the West Allegheny Avenue real property.  I also lifted the stay for Mr. Best

to defend the state court litigation.  In so doing, I denied the request of Messrs. Lange and

Galloway to retroactively validate the state court summary judgment decision entered

after the debtor's bankruptcy case had been filed and after notice of that bankruptcy filing

had been provided in that state court litigation.  See Raymark Industries, Inc. v. Lai, 973

F.2d 1125, 1132 (3d Cir. 1992); see also In re Benalcazar, 283 B.R. 514,  529 (Bankr.

N.D. Ill.  2002).  Similarly, I determined that the debtor's appeal from that decision was

invalid.  See, e.g., In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631 (3d

Cir. 1998); In re Highway Truck Drivers & Helpers Local Union No. 107, 888 F.2d 293,

298 (3d Cir. 1989); Association of St. Croix Condominium Owners v. St. Croix Hotel

Corp., 682 F.2d 446, 448-49 (3d Cir. 1982).[2]

        In granting relief from the bankruptcy stay in February 2009, I expressed no

position on the underlying merits of the ejectment action or Mr. Best's opposition

thereto.[3]

---

[2]To the extent that the Messrs. Lange and Galloway were asserting in the state
court ejectment action a damage claim against the debtor for his use of their property, the
bankruptcy stay remained in effect to preclude them from execution upon any monetary award.

[3]I did, however, observe in my February 2009 ruling that Mr. Best's challenge to
Ameriquest's right to execute on its foreclosure judgment by sheriff sale of the realty contained
the legal assumption that a mortgagee can validly assign a mortgage after the entry of a
foreclosure judgment (as opposed to assigning the judgment itself), which assumption  may not

(continued...)

[3](...continued)

be correct under Pennsylvania law, owing to the doctrine of merger.  That is, Mr. Best maintains that after entry of a judgment in foreclosure and prior to sheriff sale, Ameriquest could assign its mortgage interest to American Residential and only the assignee may thereafter execute upon the mortgage.  As I noted on February 20th:

> It would appear that Ameriquest Mortgage Co. had the right under state law to assign its foreclosure judgment.  See generally Trapp v. Laffey, 349 Pa. 160, 161 (1944) ("The original petition to open the judgment was not introduced until the assignee of the judgment had, after the judgment had been renewed and revived by scire facias, sold at sheriff's sale the property described in the mortgage and had applied to the court to have the amount of the deficiency judgment determined."); Jefferson Bank v. Newton Associates, 454 Pa. Super. 654, 659-60 (1996); Parkman v. Brosman, 14 Pa. D. & C.2d 668, 669 (1958).  There is no evidence that it did so.
>
> Moreover, under Pennsylvania law, a mortgage merges into a foreclosure judgment.  See, e.g., Lance v. Mann, 360 Pa. 26 (1948).  As observed by the Third Circuit Court of Appeals in construing state law, "[t]he doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties."  In re Stendardo, 991 F.2d 1089, 1095 (3d Cir. 1993).  Furthermore, the Third Circuit also noted that "the Mortgage ceased to exist when judgment was entered."  Id., at 1097; see also In re Dukes, 1998 WL 124220, at *3 (Bankr. E.D. Pa. 1998) ("Prior to Plaintiff's bankruptcy, a judgment . . . had been entered on her mortgage. When that occurred, the mortgage merged into the Judgment and ceased to exist."); see also In re A & P Diversified Technologies Realty, Inc.,467 F.3d 337, 343 (3d Cir. 2006) ("Under the merger doctrine, the mortgage and its concomitant attorneys' fees provision ceased to exist when the judgment was entered.") (applying New Jersey law).
>
> It may be that, under Pennsylvania law, the post-judgment assignment of the mortgage was of no effect, rather than, as the debtor now argues, that the sheriff sale had no effect.  Cf. Cancilla v. Bondy, 353 Pa. 249, 251 (1945) (mortgagee obtains judgment on May 26, 1941, assigns mortgage on July 12, 1941, and proceeds with sheriff sale on September 5, 1941).  That issue of Pennsylvania law is better left to be determined by the state courts.

(continued...)

6

No party appealed the February 20th lift stay order.

On March 23, 2009, Mr. Best removed the state court ejectment action to this court, thereafter docketed at Adv. Proc. 09-0084. On April 14, 2009, Messrs. Galloway and Lange filed the instant motion to remand the matter back to state court. Mr. Best filed a response opposing remand.

Meanwhile, on February 10, 2009, Mr. Best filed the adversary proceeding docketed at Adv. Proc. 09-0048 against Messrs. Galloway and Lange. On April 6, 2009, he filed an amended complaint, <u>inter</u> <u>alia</u>, adding defendants American Residential Equities, John D. Green, as sheriff of the City of Philadelphia, and William C. Miller, as chapter 13 trustee.[4] On April 24, 2009, Messrs. Galloway and Lange filed a motion to dismiss the amended complaint.

Similar to his allegations in opposing the state court ejectment action, in this amended complaint Mr. Best alleges that on December 2, 2004, Ameriquest assigned the mortgage it held on his West Allegheny property to American Residential Equities

---

[3](...continued)
(The parties do not refer me to any state court decision squarely on point.)

Statement of Reasons, February 10, 2009, at 13 n.8.

In response to the instant motion to dismiss, Mr. Best relies upon <u>Brumbach v. McLean</u>, 196 Pa. 321 (1900), for his contention that a mortgage interest is distinct from and survives a judgment in foreclosure and thus is assignable in Pennsylvania, although he concedes that the <u>Brumbach</u> decision "is not on all fours with the instant case" and "did not involve a mortgage that was assigned after a judgment." Debtor's Memorandum in Opposition, at 16, 18. Whether that decision supports Mr. Best's interpretation of state law, or is limited to the more narrow issue of resolving the competing claims of mortgage assignees from the same assignor, I shall again leave to the state courts to determine.

[4]The amended complaint, however, does not seek any relief against the sheriff or the chapter 13 trustee.

XXXXI, LLC, which assignment was of record before the sheriff sale at which movants purchased the property. Amended Complaint, ¶¶ 28, 83. Mr. Best thus contends again in his amended complaint that the March 2005 sheriff sale was defective and did not convey any title to his property because, at the time of sale, American Residential Equities held the mortgage and had not authorized the sale. Id., ¶¶ 54, 107.

Mr. Best has asserted four counts in his amended complaint; the first two counts are against movants Galloway and Lange only. Counts three and four are against American Residential Equities only.

In Count I of the complaint, Mr. Best seeks a declaratory judgment that any interest in the West Allegheny Avenue property claimed by Messrs. Galloway and Lange is invalid—because it is based on a deed that was obtained after a sheriff's sale that was conducted without authority under Pennsylvania law—and that the realty is property of the debtor's chapter 13 bankruptcy estate. Alternatively, in Count II he requests that this court "avoid" the sheriff's deed pursuant to 11 U.S.C. § 544(a)(3); preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551 and for the benefit of the debtor to the extent of his exempt equity pursuant to 11 U.S.C. § 522(i); recover the property pursuant to 11 U.S.C. § 550(a)(1) by compelling Messrs. Galloway and Lange to convey the property to the debtor; and impose a lien on the property in favor of Messrs. Galloway and Lange in the amount of $46,000 (the amount they allegedly paid at the foreclosure sale).[5]

---

[5]If the court does not grant Mr. Best the relief requested in Counts I or II, then Mr. Best requests in Count III, alleged against American Residential Equities, that the court avoid the sheriff's deed pursuant to 11 U.S.C. § 544(a)(3); preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551 and for the benefit of the debtor to the extent of his exempt

(continued...)

8

Therefore both adversary proceedings—the one commenced by Mr. Best in this forum and the state court matter removed to this court by Mr. Best—share a common nucleus of facts as well as seek similar relief as concerns Messrs. Lange and Galloway.

II.

I turn first to the movants' request to remand the removed state court ejectment action.  They maintain that removal is warranted for the following reasons:

- the removal was untimely;
- the debtor failed to file a notice of removal with the Superior Court of Pennsylvania;
- the debtor waived his right to remand since he fully litigated the ejectment action and foreclosure action in state court;
- this court's order of February 20, 2009 held that the state court was the appropriate forum to determine the ownership issue;
- this court lacks subject matter jurisdiction pursuant to the <u>Rooker-Feldman</u> doctrine;
- the doctrines of res judicata and collateral estoppel bar the debtor's claims;
- the requested relief is identical to the relief requested by the debtor in the pending adversary action docketed at Adv. Proc. No. 09-0048; and
- the equities clearly favor remand,

Section 1452(b) of title 28 of the United States Code provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  This subsection grants very "broad discretion" to the

---

[5](...continued)
equity pursuant to 11 U.S.C. § 522(i); and recover the property pursuant to 11 U.S.C. § 550(a)(1) by requiring American Residential Equities to pay $120,000 to the chapter 13 trustee and the trustee to pay to the debtor the amount of this property that he exempted.

If the court does not grant Mr. Best the relief requested in Counts I, II or III, then he requests in Count IV, alleged against American Residential Equities, that the court find that American Residential Equities committed an unfair and deceptive act and practice in violation of 73 P.S. § 201-2(2)(xxi), and award actual damages plus treble damages pursuant to 73 P.S. § 201-9.2.

9

court to remand a removed proceeding back to the state court from which it has been

removed or to deny the remand request.  1 <u>Collier on Bankruptcy</u> ¶ 3.07[5], at 3-79 (15th

ed. rev. 2008).

> In general, among the factors to be considered by a court in determining
>
> whether equitable grounds to remand exist are:
>
> > 1. the court's duty to decide matters properly before it;
> >
> > 2. plaintiff's choice of forum as between state and federal courts;
> >
> > 3. nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;
> >
> > 4. prejudice to involuntarily removed parties;
> >
> > 5. comity considerations;
> >
> > 6. economical and/or duplicative use of judicial resources and
> >
> > 7. effect a remand decision would have on the efficient and economic administration of the estate.

<u>Gorse v. Long Neck, Ltd.</u>, 107 B.R. 479, 482 (D. Del. 1989); <u>see</u>, <u>e.g.</u>, <u>Drexel Burnham</u>

<u>Lambert Group, Inc. v. Vigilant Insurance Co.</u>, 130 B.R. 405, 407 (S.D.N.Y. 1991); <u>see</u>

<u>also</u> 1 <u>Collier on Bankruptcy</u>, ¶ 3.07[5], at 3-80 (15th ed. rev. 2008), identifying the

relevant factors as including:

> > –*forum non conveniens*;
> >
> > –a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court;
> >
> > –a holding that a state court is better able to respond to a suit involving questions of state law;

–a situation in which trial had already been held in the state court, that court had issued its opinion, and all that remained for it to do was enter judgment;

–the expertise of the court in which the matter was pending originally, e.g., the Court of Federal Claims or the Court of International Trade.

(footnotes omitted).

In applying these general considerations, courts have noted that principles of abstention found in 28 U.S.C. § 1334(c) should be included in the matrix of equitable factors that are relevant to a determination of a motion to remand under section 1452(b). See, e.g., Christo v. Padgett, 223 F.3d 1324, 1331 (11th Cir. 2000); In re Warren, 125 B.R. 128, 130-31 (E.D. Pa. 1991); In re Asousa, 264 B.R. 376, 381 (Bankr. E.D. Pa. 2001). Indeed, the Third Circuit Court of Appeals has instructed that the issues surrounding abstention should be considered prior to application of the more general principles of equitable remand:

The defendants argue that § 1452(b) provides the exclusive means by which a federal court can remand a removed bankruptcy-related case. But section 1334(c)(2) does not purport to interfere with a court's authority to remand under § 1452(b). Rather, § 1334(c)(2) governs only whether a district court must abstain from hearing a case. Once a district court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an "equitable ground" justifying remand under § 1452(b).

Stoe v. Flaherty, 436 F.3d 209, 215 (3d Cir. 2006).

Mandatory abstention is provided by 28 U.S.C. § 1334(c)(2), which states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case

11

under title 11, with respect to which an action could not have
been commenced in a court of the United States absent
jurisdiction under this section, the district court shall abstain
from hearing such proceeding if an action is commenced, and
can be timely adjudicated, in a State forum of appropriate
jurisdiction.

Under the terms of this provision, a bankruptcy court "must abstain if the

following five requirements are met: (1) the proceeding is based on a state law claim or

cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but

does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal

courts would not have jurisdiction over the claim but for its relation to a bankruptcy case;

(4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the

action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." Stoe v.

Flaherty, 436 F.3d at 213.

Claims involving state court foreclosure proceedings of a debtor's property

are non-core, related proceedings.  These claims do not "arise in" or "arise under" any

Bankruptcy Code provisions; nor do they arise solely by virtue of a bankruptcy filing.

Thus, they are not core proceedings.  Nonetheless, their outcome could augment or

diminish the debtor's estate and thus are related to the bankruptcy case.  See Bevilacqua

v. Bevilacqua, 208 B.R. 11, 16 (E.D.N.Y. 1997).

The movants have the burden to establish the elements of mandatory

abstention, including the requirement that the proceeding could be timely adjudicated in

state court.  See generally Stoe v. Flaherty, 436 F.3d at 219 n.5; In re Midgard Corp., 204

B.R. 764, 778 (B.A.P. 10th Cir. 1997); J.D. Marshall Int'l, Inc. v. Redstart, Inc., 74 B.R.

651, 654 (N.D. Ill. 1987).

12

In this instance, all five elements of mandatory abstention have been established: The removed state court civil action is based on state law claims and causes of action that do not arise under or in the case under title 11; this court would not have jurisdiction over the proceeding but for its relation to the bankruptcy case; the proceeding is related to the debtor's chapter 13 case because its outcome may increase property of the bankruptcy estate; the ejectment action has been pending in state court since 2007 (and the sheriff sale occurred in 2005); and the state court's readiness to decide the summary judgment motion demonstrates its ability to timely adjudicate the matter. See generally In re Talon Holdings, Inc., 221 B.R. 214, 220-21 (Bankr. N.D. Ill. 1998) ("Non-core actions initiated by a debtor in a state court prior to the date of a bankruptcy petition would ordinarily seem to satisfy three of the four elements under § 1334(c)(2), as such lawsuits are not core proceedings and would not fall within the jurisdiction of the federal courts absent the bankruptcy. . . . Thus, where a party opposing removal contends that abstention is mandatory, the possibility of timely adjudication in the state court would seem to be the critical variable.").

Accordingly, mandatory abstention of the removed adversary proceeding is appropriate. See Bevilacqua v. Bevilacqua, 208 B.R. at 16 (where a debtor removed a state court action against her seeking ejectment, the court found that all of the alleged claims were non-core, had already been commenced in state court, and had reached the stage of summary judgment and trial, thus could be adjudicated in a timely fashion); Cockrell v. Cox, 2008 WL 654272 (S.D. Miss. 2008) (debtor's removed state court complaint seeking, inter alia, to enjoin mortgagee from foreclosing was subject to mandatory abstention and remand); In re Borchardt, 56 B.R. 791, 793 (D. Minn. 1986); In

13

re Mill-Craft Bldg. Systems, Inc., 57 B.R. 531, 535 (Bankr. E.D. Wis. 1986) (mandatory

abstention applied to removed state court foreclosure lawsuit).

Moreover, the undisputed facts in this contested matter justify remand to

state court even were abstention not mandatory.

This proceeding originated in the state court, filed by the movants, and they

reiterated their desire to adjudicate the matter there by requesting stay relief to continue it

in state court, which relief was granted.  Furthermore, this court determined in the lift stay

contested matter that the state court was the more appropriate forum to decide this dispute

involving postjudgment assignments of mortgages.[6]  The claims involved in this

---

[6]Mr. Best argues that Bankruptcy Rule 9027 anticipates removal of an action to
the bankruptcy court after a lift stay motion is granted, in that it provides a deadline for removal
measured from the entry of an order terminating a stay.  See Fed. R. Bankr. P. 9027(a)(2)(B).
However, the Advisory Committee note to the rule explains that removal is "of little utility" if
the pending litigation is stayed, as when the debtor is the defendant.  "As long as the stay remains
in effect there is no reason to impose a time limit for removal to the bankruptcy court and,
therefore, [the rule] provides that a removal application may be filed within 30 days of entry of
an order terminating the stay."  Advisory Committee Note to Fed. R. Bankr. P. 9027.
    Thus, I find unpersuasive Mr. Best's suggestion that the removal deadline in Rule
9027 implies that a bankruptcy court should not remand litigation after termination of the
bankruptcy stay.  Indeed, as some courts have observed, Mr. Best's removal of this case to this
court after grant of the lift stay motion "render[s] that hearing on the lifting of the automatic stay
and the order which followed an exercise in futility."  In re Abruzzo, 1999 WL 1271761, at *4
(Bankr. E.D. Pa. Dec. 28, 1999); see also In re Borchardt, 56 B.R. at 794:

> When the bankruptcy court granted Farmers Bank relief from the
> automatic stay, that court essentially determined that the state law
> claim should more appropriately be brought in state court.  This
> court agrees.  More importantly, this court will not be a party to
> debtors' tactics which effectively circumvent the bankruptcy
> court's order granting Farmers Bank relief from the automatic stay
> and authorizing the bank to pursue its state law remedies.  Seeking
> to avoid the inevitable foreclosure, the debtors have engaged in a
> manipulation of the bankruptcy procedures.  For the above reasons,
> the equities of the present circumstances warrant the court's
> remand.

14

proceeding are purely state law claims better addressed by the state court. See In re

Abruzzo, 1999 WL 1271761, at *3 (Bankr. E.D. Pa. Dec. 28, 1999) (noting state court

has more experience and expertise than bankruptcy court in foreclosure matters). Comity

considerations as well as prejudice to the state court plaintiffs support allowing the state

court to determine a civil action pending before it for more than one year, rather than

restarting the litigation process in a federal court. See id., at *3 (noting prejudice to state

court plaintiffs in not remanding foreclosure proceeding litigated past the point of

judgment). Moreover, determining this proceeding in bankruptcy court may be

uneconomical, given that the state court has already heard argument and reviewed

pleadings, including those submitted for summary judgment. See generally In re Grace

Community, Inc., 262 B.R. 625, 630 (Bankr. E.D. Pa. 2001) (non-core, related matters

with no federal claims must be remanded if the action has been commenced in state court,

and can be timely adjudicated there); see Abruzzo, at *3 ("advanced stage" of proceeding

supported remand). Thus, remand for equitable reasons is also appropriate. See In re

Canton, 2009 WL 981114 (Bankr. D. Mont. 2009).

Accordingly, I will abstain from retaining jurisdiction of the adversary

proceeding removed to this court and docketed at Bankr. No. 09-0084, and will remand

that lawsuit back to the state court under section 1452(b).


III.


Next, I shall consider defendants' Lange and Galloway's motion to dismiss

Counts I and II of the amended complaint that Mr. Best initiated against them in this

15

bankruptcy court.  Among the myriad of arguments that the movants present for

dismissing these two claims is that this bankruptcy court should exercise its discretion in

abstaining from taking jurisdiction over the adversary proceeding, and that the complaint

fails to state a cause of action against them.[7]


A.


As noted previously, Count I seeks a declaration that the March 2005

sheriff sale and subsequent deed did not convey Mr. Best's interest in the West Allegheny

realty, pursuant to Pennsylvania law.  Although the state court litigation, just remanded,

does not seek affirmative relief in favor of Mr. Best beyond dismissal of the ejectment

action, the debtor raises similar factual and legal arguments to Count I under the heading

"New Matter."

> 28 U.S.C. § 1334(c)(1) provides:
>
> [N]othing in this section prevents a district court in the
> interest of justice, or in the interest of comity with State courts
> or respect for State law, from abstaining from hearing a
> particular proceeding arising under title 11 or arising in or
> related to a case under title 11[,]

---

[7]To the extent that defendants' Lange and Galloway seek to dismiss Counts III and
IV, which seek relief only against defendant American Residential Equities XXXXI, LLC, they
have no standing to do so.  See, e.g., Dover Ltd. v. A.B. Watley, Inc., 2006 WL 2987054, at *8
(S.D.N.Y. 2006); Standard Chlorine of Delaware, Inc. v. Sinibaldi, 1994 WL 796603, at *7 n.5
(D. Del. 1994) ("Mantas Inc. is not named as a defendant in Count VI and accordingly has no
standing to move for its dismissal or for summary judgment on the count."); see also Ashcroft v.
Department of Corrections, 2007 WL 1989265, at *8 (W.D.N.Y. 2007) ("Thus, DOCS (and the
other moving defendants) lack standing to move to dismiss claims against the non-appearing
defendants Madison, Zon, and Ashby and their motions as to these claims is denied.");
Norfolk Federation of Business Districts v. Dep't of Housing & Urban Dev., 932 F. Supp. 730,
741-42 (E.D. Va. 1996).

The non-specific language of the statute, its evolution, and the paucity of legislative history has resulted in somewhat differing approaches toward permissive abstention of bankruptcy proceedings.  See generally Block-Lieb, Permissive Bankruptcy Abstention, 76 Wash. U.  L.Q. 781 (Fall, 1998).  One circuit court has made general observations, in dicta,[8] that section 1334(c)(1) affords "broad power to abstain whenever appropriate" and that "[t]he abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case."  Matter of Wood, 825 F.2d 90, 93 (5th Cir. 1987).

In this district, the consensus position involves consideration of a non-exclusive list of factors:

> The following criteria guide the discretionary decision to abstain: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of related non-bankruptcy proceedings; (5) the basis of the bankruptcy court's jurisdiction over the claim; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the claim in bankruptcy court involves forum shopping; (11) the existence of the right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

---

[8]A court of appeals has no jurisdiction to review the application of discretionary abstention.  See 28 U.S.C. § 1334(d); In re Federal-Mogul Global, Inc., 300 F.3d 368, 389 n.14 (3d Cir. 2002).  Thus, there can be no circuit court-mandated approach.

Gilbert v. Ben Franklin Hotel Associates,1995 WL 598997, at *1 (E.D. Pa. 1995); see

e.g., Allen v. J.K. Harris & Co., LLC, 331 B.R. 634, 645 (E.D. Pa. 2005); In re Asousa

Partnership, 276 B.R. 55, 74-75 (Bankr. E.D. Pa. 2002); see also Bricker v. Martin, 348

B.R. 28, 34 (W.D. Pa. 2006); Civic Center Cleaning Co. v. Reginella Corp., 140 B.R.

374, 375-76 (W.D. Pa. 1992); In re Laroche Industries, Inc., 312 B.R. 249, 253-54

(Bankr. D. Del. 2004); see also 1 Norton Bankr. L. & Prac. 3d, § 4:40 (2009) (listing 14

factors).

       "Courts should apply these factors flexibly, for their relevance and

importance will vary with the particular circumstances of each case, and no one factor is

necessarily determinative."  Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6

F.3d 1184, 1189 (7th Cir. 1993).  Furthermore, whether permissive abstention is

appropriate is committed to bankruptcy court discretion.  See, e.g., Civic Center Cleaning

Co., Inc. v. Reginella Corp., 140 B.R. at 375; In re Asousa Partnership, 276 B.R. at 75.

Moreover, core claims as well as non-core claims are subject to permissive abstention.

See, e.g., In re Best Reception Systems, Inc., 220 B.R. 932, 952 (Bankr. E.D. Tenn.

1998).

       One court has noted that discretionary abstention involves equitable factors

similar to those involved in applying the equitable remand provisions of section 1452(b).

"Pursuant to these statutes [i.e., 28 U.S.C. §§ 1334(c)(1), 1452(b)], in considering

whether equity requires abstention and remand, courts assess (1) the effect on the efficient

administration of the bankruptcy estate, (2) the extent to which issues of state law

predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity,

(5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed

defendants. . . ." In re RBGSC Inv. Corp., 253 B.R. 369, 381-82 (E.D. Pa. 2000),

overruled in part on other grds., In re Exide Technologies, 544 F.3d 196, 220 (3d Cir.

2008); see also Shared Network Users Group, Inc. v. WorldCom Technologies, Inc., 309

B.R. 446, 451 (E.D. Pa. 2004).

       Because I concluded above that the removed ejectment proceeding should

be remanded to state court, the relief sought by Mr. Best in Count I of his amended

complaint would parallel his affirmative defenses in that state court litigation.  In

considering whether discretionary abstention as to the declaratory judgment in Count I is

warranted in these circumstances, I note that when parallel litigation is pending in both

state and federal courts, abstention may be appropriate under Colorado River Water

Conservation District v. United States, 424 U.S. 800, 817 (1976), owing to considerations

of "'wise judicial administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation.'"[9] The courts considering abstention under

Colorado balance six factors: "(1) which court first assumed jurisdiction over property

involved, if any; (2) the relative convenience of the fora; (3) the desirability of avoiding

piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal

or state law applies and (6) whether the state court will adequately protect the federal

plaintiff's interests."  BIL Management Corp. v. New Jersey Economic Development

Authority,  310 Fed. Appx. 490, 492 (3d Cir. 2008) (non-precedential).

---

     [9]Quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183
(1952).

Application of these various factors support the movants' request that this court abstain from adjudicating Count I of the amended complaint. Count I is grounded upon Mr. Best's contention that the sheriff deed transfer was a nullity as based on a sale conducted without authority and contrary to notices that he received; thus, this claim involves application of Pennsylvania law rather than federal bankruptcy law. Moreover, Count I restates the defense Mr. Best presented in the state court. The state court litigation has been pending since 2007, long before this bankruptcy case commenced. Comity supports dismissal. The state law issues raised by the debtor in Count I will be adequately considered by the state court judge in the remanded litigation. And, as mentioned earlier, the state court will likely be able to decide this dispute quickly, a positive effect on the administration of this bankruptcy case.[10] Additionally, given the timing of the filing of this adversary proceeding (on the day the movants argued for relief from the bankruptcy stay to prosecute their state court action), originally naming only Galloway and Lange in the complaint, it is probable that this adversary proceeding was commenced primarily to obtain a federal forum for the same issues that make up the debtor's new matter in the state court litigation. See In re Abruzzo, 1999 WL 1271761, at *4:

> The last but most compelling reason to remand is to prevent Debtor's utilization of the removal statute to circumvent an order granting S&S relief from the bankruptcy stay to pursue the foreclosure proceeding in state court. In granting S&S relief from the stay, I made the determination that no legitimate purpose would be served by permitting Debtor's bankruptcy case to further delay the foreclosure proceeding in

---

[10]The debtor's chapter 13 plan depends upon his sale of the disputed property. Therefore, speedy determination of the state court matter will prevent delay in confirmation and administration of this case.

state court.  Allowing Debtor to proceed with the foreclosure
proceeding here would undermine and nullify that
determination.  If Debtor legitimately believed that the
foreclosure presented issues that should be addressed by this
Court rather than the state court, she would have sought
removal proximate to her bankruptcy filing rather than
waiting until relief from the stay was granted.  The timing of
the removal petition, occurring after the stay relief order,
portends other intentions.

Accordingly, Count I of the amended complaint shall be dismissed under 28

U.S.C. § 1334(c)(1) in favor of the state court adjudication of the ejectment litigation.

See In re Rarick, 132 B.R. 47 (D. Colo. 1991); In re Counts, 54 B.R. 730 (Bankr. D.

Colo. 1985); In re Ghen, 45 B.R. 780 (Bankr. E.D. Pa. 1985); see generally C.K.

Williams, Inc. v. All American Life Ins. Co., 1994 WL 541992 (D. Kan. 1994)

(declaratory judgment action dismissed in light of pending state court litigation).[11]


B.


Finally, Count II purports to raise a claim under section 544(a)(3) of the

Bankruptcy Code as an alternative to the relief sought in Count I.  However, as I will now

discuss, those allegations fail to state a claim against defendants Lange and Galloway.

11 U.S.C. § 544(a)(3) provides:

---

[11]Since a bankruptcy court's jurisdiction of a multi-count complaint is determined
on a count by count basis, with some counts possibly classified as core and others non-core,
Halper v. Halper, 164 F.3d 830, 839 (3d Cir. 1999), abstention considerations must be similarly
considered.  See In re Bay Vista of Virginia, Inc., 394 B.R. 820 (Bankr. E.D. Va. 2008); In re
Alliance Leasing Corp., 2007 WL 5595446 (Bankr. M.D. Tenn. 2007) (abstaining from hearing
counts remaining after dismissing two others); In re Kesar Enterprises, Inc., 330 B.R. 756, 758
(Bankr. W.D. Mo. 2005) ("State Bank's Abstention Motion is granted as to Count I of the
Amended Complaint and denied as to Counts II, III and IV. . . ."); In re Federalpha Steel LLC,
341 B.R. 872 (Bankr. N.D. Ill. 2006).

21

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The import of section 544(a), known colloquially as the trustee's

"strong-arm powers," see, e.g., In re Bridge, 18 F.3d 195, 198 (3d Cir. 1994), was

summarized by a bankruptcy commentator:

Federal and state law thus work in tandem: First, section 544(a) confers on the trustee the status of both a judicial lienor and bona fide purchaser who claim property through the debtor, and provides that the trustee enjoys their rights and powers with respect to the property.  Second, the substance of these rights and powers, primarily the priority of these claims in relation to other interests in the property, is then determined by reference to state law.  Third, if state law provides that the trustee's claim (as a judicial lienor or bona fide purchaser) is entitled to priority over a third party's interest in the property, the consequence is prescribed by federal law, section 544(a), which is that the trustee can entirely avoid the inferior, third-party claim.  The third party's [property] interest is completely eliminated as to the third party even though the result under state law would be less severe.

On the other hand, the third party's interest is unaffected by section 544(a) if, under state law, her interest primes the trustee's claim as lien creditor or purchaser.  This is true even if state law subordinates the third person's interest to other kinds of claims that the trustee cannot assert under section 544(a).

Epstein, 2 Bankruptcy § 6-61, at 111-12 (1992); see, e.g., In re Bridge, 18 F.3d at 200.

Insofar as section 544(a) is concerned, and accepting <u>arguendo</u> that the debtor has standing to assert in Count II a trustee's strong-arm powers under section 544,[12] "as of the date of the petition's filing, § 544(a)(1) confers upon the trustee the rights of a hypothetical judgment lien creditor; § 544(a)(2) confers upon the trustee the rights of a hypothetical unsatisfied execution creditor; and § 544(a)(3) confers upon the trustee the rights of a bona fide purchaser when, as in this case, real property is at issue." <u>In re Bridge</u>, 18 F.3d at 199. "Thus the Bankruptcy Code permits a trustee (and, through section 522(h), a debtor) to avoid an obligation if it can be shown that the obligation would not have bound a bona fide purchaser at the time the debtor commenced her bankruptcy action." <u>McLean v. City of Philadelphia, Water Revenue Bureau</u>, 891 F.2d 474, 476 (3d Cir. 1989).

After accepting all of the plaintiff's factual allegations as true and the reasonable inferences therefrom, if Count II fails to state a cause of action entitling the debtor to any relief, dismissal is warranted. <u>See</u>, <u>e.g.</u>, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); <u>In re Joubert</u>, 411 F.3d 452 (3d Cir. 2005); <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009) ("[O]nly

---

[12]Courts accept that a chapter 13 debtor can utilize this trustee avoiding power to the extent provided by sections 522(g) and (h), which provisions are concerned with exempt property. <u>See</u> <u>In re Dyson</u>, 348 B.R. 314, 318 (Bankr. E.D. Va. 2006); <u>In re Quisenberry</u>, 295 B.R. 855, 863 (Bankr. N.D. Tex. 2003); 5 <u>Collier on Bankruptcy</u>, ¶ 544.02, at 544-5 (15th ed. rev. 2008); <u>see also</u> In re Hannah, 316 B.R. 57 (Bankr. D.N.J. 2004) (chapter 13 debtor has no standing to raise a claim under section 544(a) outside the scope of sections 522(g) and (h)).

a complaint that states a plausible claim for relief survives a motion to dismiss."); In re

Banks, 214 Fed. Appx. 164 (3d Cir. 2007) (non-precedential).

       The issue regarding the plausibility of Count II under Fed. R. Bankr. P.

7012 (incorporating, inter alia, Fed. R. Civ. P. 12(b)(6)) therefore is whether on October

31, 2008, the date Mr. Best commenced this bankruptcy case, would a bona fide

purchaser of the West Allegheny realty from the debtor have been able to defeat or prime

the property interest asserted by Messrs. Lange and Galloway, based upon Pennsylvania

law.  See 5 Collier on Bankruptcy, ¶ 544.02, at 544-6 (15th ed. rev. 2008) ("[T]he extent

of trustee's rights as a . . . bona fide purchaser or real property is measured by the

substantive law of the jurisdiction governing the property in question.").

       Clearly, if Messrs. Lange and Galloway held an unrecorded deed to the

property on October 31, 2008, a bona fide purchaser would defeat their interests.  See In

re Bella Vista Associates, LLC, 2007 WL 4555891, at *5 (Bankr. D.N.J. 2007) ("Under

Pennsylvania law, an equitable interest in property, e.g., an interest held in the form of an

unrecorded deed, is valid only as against the defendants. . . .  It is not enforceable against

a subsequent bona fide purchaser for value, unless that purchaser had actual or

constructive notice of the equitable interest.") (citations omitted); In re Capital Center

Equities, 137 B.R. 600 (Bankr. E.D. Pa. 1992); In re Nemacolin, Inc., 105 B.R. 6 (Bankr.

W.D. Pa. 1989); see generally In re Bridge, 18 F.3d 195 (3d Cir. 1994) (applying New

Jersey law).

       But here, Mr. Best concedes that Messrs. Lange and Galloway had recorded

their sheriff's deed to the realty long before he filed his bankruptcy petition.  Such

recordation would place any bona fide purchaser on constructive notice of their property

24

interest. <u>See</u> 21 P.S. § 357 (recording of deed places a party upon constructive notice of property interest); <u>Mid-State Bank and Trust Co. v. Globalnet Int'l, Inc.</u>, 557 Pa. 555, 565 (1999) ("A party is on constructive notice of another's interest in real property where the party 'could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds.'") (quoting <u>Lund v. Heinrich</u>, 410 Pa. 341, 346 (1963)).  Indeed, the Third Circuit Court of Appeals observed that:

> Pennsylvania law gives subsequent purchasers of real property priority over the rights of prior purchasers if the subsequent purchasers are bona fide purchasers for value without notice.  Record notice defeats the claims of a subsequent purchaser.

<u>McCannon v. Marston</u>, 679 F.2d 13, 15 (3d Cir. 1982); <u>see also</u> <u>In re Bella Vista Associates, LLC</u>, 388 B.R. 99, 105 (Bankr. D.N.J. 2008) (under Pennsylvania law untimely recordation of a mortgage places a subsequent purchaser on notice and defeats an avoidance claim under section 544).

Thus, where as here the debtor asserts in his amended complaint that the movants recorded their deed to the West Allegheny realty in June 2005, such record notice would defeat the ability of a hypothetical purchaser on October 31, 2008 to claim bona fide status without notice of the prior interest.  <u>See</u> <u>In re Minton Group, Inc.</u>, 27 B.R. 385, 388 (Bankr. S.D.N.Y. 1983) ("A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title.").  Therefore, the debtor's section 544(a)(3) allegations in Count II fail to state a claim upon which relief can be granted.

Accordingly, an order will be entered dismissing Counts I and II of the debtor/plaintiff's complaint.  In addition, an order will remand the movants' state court matter back to state court with the automatic stay again lifted as to both plaintiffs and defendant.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated:  June 12, 2009